UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------

GENIAL HOLDING LTDA *et al.*,

                              Plaintiffs,

            -v-

BRASIL PLURAL SECURITIES, LLC *et al.*,

                              Defendants.

24 Civ. 5780 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

      This case involves an alleged misappropriation of intellectual property—in particular, trademarks—by former licensees of the marks' owners. Plaintiffs Genial Holding Ltda. ("Genial Holding") and Banco Genial S.A. ("Banco Genial," and collectively, "plaintiffs") bring this action against defendants Brasil Plural Securities, LLC ("BP Securities"), Brasil Plural Holdings, LLC ("BP Holdings"), and Manuel Maria Monteiro Dias Fernandes Fernandez ("Fernandez," and collectively, "defendants"). They allege unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); unfair competition and misappropriation, in violation of New York common law; and deceptive acts and practices, in violation of New York General Business Law ("GBL") §§ 349 and 350. Defendants now move to dismiss plaintiffs' Amended Complaint ("AC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants the motion to dismiss the GBL claim, but otherwise denies the motion.

I.  **Background**[1]

    A.  **Factual Background**

        1.  **The Parties**

            a.  **Plaintiffs**

Genial Holding is a holding company for non-party Brasil Plural Group ("BP Group"), a leading financial institution based in Brazil and known for its "PLURAL" and "BRASIL PLURAL" marks (the "Brasil Plural Marks"). AC ¶¶ 2, 9. It owns registered rights to the Brasil Plural Marks in Brazil. *Id.* ¶ 9. It also claims to own common-law rights to the marks in the United States through their use by its licensee, defendant BP Securities. *Id.*

Banco Genial, formerly known as Brasil Plural S.A. Banco Múltiplo, is a Brazilian banking firm established in 2009. *Id.* ¶ 8. It offers investment banking, asset management, wealth management, and real estate advisory services under the "Brasil Plural" trade name. *Id.* Banco Genial is controlled by Genial Holding and another entity within the BP Group. *Id.* ¶¶ 2, 8, 19.

            b.  **Defendants**

BP Securities, formed in 2011, is a Delaware limited liability company with its principal place of business in New York. *Id.* ¶¶ 10, 20. It is a brokerage firm that offers financial services, including wealth management and securities trading, to clients and banks. *Id.* ¶ 10. Plaintiffs licensed BP Securities to provide its services using the Brazil Plural Marks, subject to plaintiffs' quality control. *Id.* ¶ 3. Through BP Securities' "widespread use and promotion of

---

[1] The following account is drawn from the AC, Dkt. 30, and the parties' submissions on defendants' pending motion. These include defendants' memorandum of law, Dkt. 31-1 ("Defs. Br."), and Manuel Maria Monteiro Dias Fernandes Fernandez's declaration, Dkt. 31-2 ("Fernandez Decl."), in support of defendants' motion; plaintiffs' opposition, Dkt. 36 ("Pls. Br."); and defendants' reply, Dkt. 37 ("Defs. Reply").

the marks in the U.S.," the AC alleges, "Plaintiffs gained strong U.S. common law rights" in the Brazil Plural Marks. *Id.*

BP Holdings is a Delaware limited liability company with its principal place of business in New York. *Id.* ¶ 11. It is the sole member of BP Securities. *Id.* ¶ 12.

Fernandez is a citizen of Brazil who resides in New York. *Id.* He is a former partner of non-party BP Group, and is currently the controlling shareholder of BP Holdings. *Id.*

### 2.     Plaintiffs' Trademarks

Between 1997 and 2014, Genial Holding registered several Brasil Plural Marks in Brazil in connection with its financial services. *Id.* ¶ 17. These include the word marks "PLURAL CAPITAL," "PLURAL INVESTIMENTOS," "PLURAL," and stylized versions of the Brasil Plural and Plural marks. *Id.* It has largely used these trademarks in connection with its insurance, business, financial, and real estate services. *Id.* As discussed below, plaintiffs allege that, through the authorized use of these marks by their licensee BP Securities, they also have common-law rights over the Brasil Plural Marks in the United States. *Id.* ¶ 18.

### 3.     Plaintiffs' Business Relationship with Defendants

In 2018, Fernandez and Rodolfo Reichert, founder of non-party BP Group, negotiated for Fernandez to acquire ownership of BP Holdings to enable Fernandez, after he moved to New York, to run BP Group's international operations from the United States. *Id.* ¶ 24. The AC alleges that "Reichert and Fernandez discussed this transaction with the understanding that under Fernandez, Defendant [BP] Securities . . . would remain closely integrated with Plaintiffs as the international arm of [BP] Group's business," and BP Group "would later repurchase the shares of Defendant [BP] Holdings . . . from Fernandez." *Id.* The repurchase price "was to be determined at a later time, taking into account the resources that [BP] Group contributed to the joint business activities" while Fernandez operated BP Securities and BP Holdings, "including a

3

license for Defendant [BP] Securities . . . to use the Brasil Plural Marks under the quality control of Plaintiffs." *Id.*

On October 30, 2018, Fernandez and Banco Genial (then Brasil Plural S.A. Banco Múltiplo) entered into a Share Purchase Agreement (the "Agreement"), under which Fernandez acquired all shares of BP Holdings to run BP Group's international operations in the United States. Fernandez Decl., Ex. A ("SPA"); AC ¶¶ 24–26. The Agreement did not identify any intellectual property, including the Brasil Plural Marks, as part of the transaction. AC ¶ 26. Rather, as alleged, plaintiffs "authorized Defendants to do business with Plaintiffs' clients," and "licensed Defendants to use the Brazil Plural Marks only in connection with their joint business to operate [BP] Securities . . . because those services were to be provided to clients under [BP] Group's brand." *Id.* ¶¶ 28–29. As alleged, plaintiffs provided defendants with infrastructure to operate in the United States, and supervised defendants' use of the Brasil Plural Marks. *Id.* ¶¶ 30–31. To facilitate plaintiffs' supervision, defendants "openly shared business information, such as commercial strategies, accounting, and financial information, with Plaintiffs." *Id.* ¶ 31.

### 4.     **Defendants' Allegedly Infringing Activities**

On May 5, 2023, at the direction of Fernandez, BP Holdings applied to register "PLURAL" as a word mark and a stylized mark in the U.S. Patent and Trademark Office ("PTO"). *Id.* ¶ 33 (citing application nos. 97/922846 and 97/922847). Genial Holding opposed the applications. *Id.* At the parties' joint request, the Trademark Trial and Appeal Board suspended the opposition proceeding pending the outcome of this litigation. *Id.*

The AC alleges that defendants thereafter began "actively and deliberately using the Brasil Plural Marks outside the scope of Plaintiffs' authorization and license," including on new websites and investment funds, "in an effort to create confusion as to their affiliation with Plaintiffs." *Id.* ¶ 41. It alleges that defendants applied to register the Brasil Plural Marks after a

4

dispute arose between the parties as to their joint business activities, and that Fernandez "was fully aware that Plaintiffs owned the U.S. trademark rights." *Id.* ¶ 39. And, it alleges, defendants' promotional materials identified Fernandez as a "senior partner and member of the board of directors of some of the most important investment banks in Brazil, *such as Banco Genial*." *Id.* ¶ 46 (emphasis in original). These actions, the AC pleads, aimed to capitalize on the BP Group brand, create confusion in the marketplace, and have damaged plaintiffs' business, reputation, and goodwill. *Id.* ¶¶ 44, 48.

## B. Procedural History

On July 30, 2024, plaintiffs filed their initial Complaint. Dkt. 1. On October 7, 2024, the defendants moved to dismiss under Rule 12(b)(6). Dkts. 20–22. On October 8, 2024, the Court directed plaintiffs to file any amended complaint or opposition by October 28, 2024. Dkt. 23. On November 11, 2024, plaintiffs filed the three-count AC, the operative Complaint today. Dkt. 30. Count One alleges unfair competition and false designation of origin violations of the Lanham Act, specifically, that defendants appropriated the Brasil Plural Marks in connection with their services outside the scope of their license from plaintiffs, thereby confusing the public as to their affiliation with plaintiffs. Count Two alleges unfair competition and misappropriation in violation of New York common law, specifically, that defendants regularly advertise and promote their business by using the Brasil Plural Marks without plaintiffs' authorization and holding themselves out, in bad faith, as the owner of those marks. Count Three alleges deceptive practices and false advertising in violation of GBL §§ 349 and 350, specifically, that defendants' unauthorized use of the Brasil Plural Marks on their website to market their financial services to consumers and their applications for marks similar to those owned by plaintiffs constitute consumer-oriented activities likely to mislead the public.

On December 6, 2024, defendants filed a motion to dismiss the AC, Dkt. 31, a supporting memorandum of law, Dkt. 31-1, and a declaration, Dkt. 31-2. On January 3, 2025, plaintiffs opposed. Dkt. 36. On January 10, 2025, defendants replied. Dkt. 37.

## II. Legal Standard for a Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. For the purpose of resolving the motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III. Discussion

The AC brings claims for unfair competition and false designation of origin under § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); unfair competition under New York common law; and deceptive acts and practices under GBL §§ 349 and 350. Defendants move for dismissal of all claims, under Rule 12(b)(6), on the grounds that the October 30, 2018 Agreement purportedly transferred the rights to the trademarks at issue and/or that plaintiffs do not possess common law rights to these marks. The Court denies that motion, because the Agreement does not clearly so provide, and, on the facts pled and the limited materials cognizable at this stage, defendants'

6

premise as to the ownership of the marks at issue cannot be validated. However, the Court grants the motion to dismiss Count Three, deceptive trade practices under the GBL, for lack of any alleged public injury. The Court accordingly addresses each claim in turn.

### A. Count One: Unfair Competition Under Lanham Act § 43

#### 1. Applicable Law

"Section 43(a) is a broad federal unfair competition provision." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002). It creates a federal cause of action against:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1125(a)(1). To plead a violation of this statute, a complaint must allege that (1) goods or services are involved; (2) interstate commerce is affected; and (3) a false designation of origin or a false description or representation with respect to those goods or services in commerce likely to cause confusion, mistake, deception, or which is a misrepresentation. *See Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 56 (S.D.N.Y. 2015).

#### 2. Analysis

The AC plausibly alleges all required elements of § 43(a). It does so by alleging that plaintiffs "own[] a number of registrations for the Brasil Plural Marks in Brazil in connection with financial services" since at least 1997, AC ¶ 17; that they "gained strong U.S. common law

7

rights in the [Brasil Plural M]arks dating since . . . 2011", *id.* ¶ 3; that defendants have used plaintiffs' marks to falsely represent their services, *id.* ¶¶ 40–48, causing a likelihood of confusion, *e.g.*, *id.* ¶¶ 37, 41, 46–47; and that interstate commerce is affected by defendants' use of the marks, *id.* ¶¶ 33, 40–48; *see, e.g.*, *Blockchange Ventures I GP, LLC v. Blockchange, Inc.*, No. 21 Civ. 891 (PAE), 2021 WL 4340648, at *5 (S.D.N.Y. Sept. 22, 2021) (sustaining § 43(a) claim which pled that defendant provided services with a false designation that would suggest that plaintiff provided those services); *Pulse Creations*, 154 F. Supp. 3d at 57 (similar).

Defendants argue that plaintiffs' claims must be dismissed because plaintiffs cannot plausibly allege ownership of the Brasil Plural Marks in the United States. *See* Defs. Br. at 4–8. They rely on the parties' Agreement under which Fernandez acquired BP Holdings and became the "sole and lawful owner" of BP Securities. *Id.*; *see* SPA § 2.2(b). They claim that by this transaction, BP Securities necessarily transferred to Fernandez and BP Holdings all rights to the marks that it used, insofar as under the Agreement, BP Securities had "full corporate power and authority to conduct its business and perform all of its obligations." Defs. Br. at 7 (quoting SPA § 2.2(b)). Plaintiffs counter that the AC adequately pleads that they retained sole ownership of the marks, including in the United States, and that, as to the Brasil Plural Marks, the Agreement merely licensed and supervised use of them by Fernandez but did not transfer ownership of them to him. Pls. Br. at 5–12.

On the present record, the Court cannot grant defendants' motion to dismiss based on the claim that the Agreement gave them ownership of the marks. The AC plausibly pleads that plaintiffs owned the marks as of the time of the Agreement, and that plaintiffs at no point did anything more than to license the marks to defendants for finite uses. And it does not plead that the Agreement overrode these licensing arrangements. *See* AC ¶¶ 24–32. In its account of the

8

Agreement, the AC does not anywhere plead that the Agreement transferred any trademark rights to the defendants. *See id.*

To be sure, the Agreement is cognizable on this motion. Therefore, if the Agreement had clearly transferred ownership of the Brasil Plural Marks to Fernandez and BP Holdings, such had the capacity to defeat plaintiffs' claims, based as they are on the premise of plaintiffs' ownership. But the Agreement does not contain any term or provision that is explicit as to mark ownership. On the contrary, it is silent to the marks—it does not reference them at all. And defendants' contention that the Agreement's nature, or provisions such as those that refer to BP Securities "conduct[ing] its business" and "perform[ing] all of its obligations," implicitly mean that the ownership of the marks was being transferred to defendants is forcefully disputed by plaintiffs. That dispute cannot be resolved in defendants' favor on the pleadings. SPA § 2.2(b).

Resolving that question must instead await discovery and thoughtful briefing. To resolve these questions, it will likely prove necessary for the parties to develop, and the Court to examine, the full business context of the Agreement. Discovery may reveal, consistent with defendants' thesis, that, under the Agreement, Fernandez's purchase of "the totality of Shares held in [BP Holdings]," a United States-based corporate entity, included all of its owned Brasil Plural Marks. *Id.* § 1.1. But it alternatively may reveal, as plaintiffs plausibly contend, that Fernandez's acquisition of "full ownership and possession of the Shares" of BP Holdings was solely intended for him to run BP Securities as BP Group's international arm in the United States, and was not intended as a means for plaintiffs to cede global ownership of the Brasil Plural Marks. *Id.* § 1.4; Pls. Br. at 8. Discovery may also reveal a distinction as to post-Agreement ownership between plaintiffs' Brazil-based marks and the disputed United States-based marks. And if the Agreement proves ambiguous on salient points after consideration of its

9

text and context, examination of the negotiations surrounding the Agreement may prove warranted, to determine whether there was a meeting of the minds as to any change in ownership of the marks. *See, e.g., JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) (collecting cases); *Collins v. Harrison–Bode*, 303 F.3d 429, 433–34 (2d Cir. 2002) ("[W]here . . . there are internal inconsistencies in a contract pointing to ambiguity, extrinsic evidence is admissible to determine the parties' intent." (citation omitted)); *U.S. Fire Ins. Co. v. Gen. Reinsurance Corp.*, 949 F.2d 569, 571 (2d Cir. 1991) (courts may consider "negotiations and agreements made prior to or contemporaneous with the execution of a written contract" when assessing ambiguous contracts).

In sum, accepting the AC's well-pled allegations as true, and drawing all reasonable inferences in plaintiffs' favor, the AC has adequately pleaded plaintiffs' ownership. It therefore survives dismissal. *See Koch*, 699 F.3d at 145 (courts must assume all well-pled facts as true and draw all reasonable inferences in favor of the non-moving party).

The Court thus denies defendants' motion to dismiss Count One, without prejudice to defendants' right, following discovery and further briefing, to move for summary judgment on the ground that plaintiffs' Lanham Act claims fail for lack of evidence of trademark ownership.

### B. Count Two: Unfair Competition Under New York Common Law

#### 1. Applicable Law

To prevail on a claim of unfair competition under New York law, a plaintiff must show (1) likelihood of confusion and (2) bad faith by the defendant. *See Burberry Ltd. v. Designers Imps., Inc.*, No. 7 Civ. 3997, 2010 WL 199906, at *8 (S.D.N.Y. Jan. 19, 2010); *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 408 (2d Cir. 1997) ("[T]he essence of unfair competition is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." (citation omitted)).

10

### 2. Analysis

The AC states a claim for unfair competition under New York common law. As to the required elements, it adequately alleges the likelihood of confusion and defendants' bad faith. The latter inference fairly arises from various allegations in the AC, including that defendants (1) used plaintiffs' Brasil Plural Marks in commerce knowing that plaintiffs owned these and after a dispute concerning the parties' joint business activities, (2) applied for registration of two word marks highly similar in style to the Brasil Plural Marks, (3) placed prominent enlarged images of the terms "PLURAL" and "BRASIL PLURAL" on their new website, and (4) falsely held out Fernandez as a current partner and board member of Banco Genial. *See* AC ¶¶ 33–36, 38, 41–46; *see, e.g., Int'l Diamond Imps., Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 525 (S.D.N.Y. 2014) (complaint adequately pled bad faith where plaintiffs alleged that defendants knowingly used plaintiffs' trade dress to sell knock-off jewelry); *Fischer v. Forrest*, No. 14 Civ. 1304 (PAE), 2015 WL 195822, at *12 (S.D.N.Y. Jan. 13, 2015) (complaint adequately pled bad faith where plaintiff alleged, *inter alia*, an intentional copy of his protected mark to sell a competing product and defendant's persistence after receiving a cease-and-desist letter); *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 240 (S.D.N.Y. 2012) ("Actual or constructive knowledge of the senior user's mark may be indicative of bad faith."). And, for the reasons stated above, the Court cannot reject, on the pleadings, plaintiffs' claim to have owned the marks.

The AC therefore states a claim of unfair competition under New York common law.

### C. Count Three: GBL Deceptive Acts and Practices

#### 1. Applicable Law

To state a claim under GBL § 349, "a plaintiff 'must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material

11

way; and third, that the plaintiff suffered injury as a result of the deceptive act.'" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000)). Vital here, a deceptive act alone does not suffice to make out a claim. The act instead must have "a broader impact on consumers at large." *Int'l Diamond Imps.*, 64 F. Supp. 3d at 515 (quoting *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d Cir. 2000)); *see also, e.g., Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). It must "threaten the public interest, such as potential danger to public health or safety." *Int'l Diamond Imps.*, 64 F. Supp. 3d at 515; *see also id.* at 515 nn.132–33 (collecting cases). "Claims for false advertising under [GBL] § 350 are subject to the same standard." *RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 14 Civ. 6294, 2015 WL 5008762, at *3 (S.D.N.Y. Aug. 24, 2015) (citation omitted). The majority view in the Second Circuit is that "trademark infringement claims are not cognizable under §§ 349 and 350 unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution." *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 435 (S.D.N.Y. 2012) (cleaned up); *see also Medisim Ltd. v. BestMed LLC*, No. 10 Civ. 2463, 2012 WL 1450420, at *3 n.21 (S.D.N.Y. Apr. 23, 2012).

### 2. Analysis

The AC does not state a claim under GBL §§ 349 and 350, because it does not allege a "specific and substantial injury to the public interest" beyond trademark infringement or dilution. It generally alleges that "Defendants' actions, including the unauthorized use of Plaintiffs' marks and the application for marks and logos nearly identical to those owned by Plaintiffs, are creating and likely to create further confusion in the marketplace." AC ¶ 47. But it does not allege any injury besides the injury to plaintiffs, *see, e.g., id.* ¶¶ 47–48, 51, and confusion to the public, *id.* ¶¶ 6, 51. But "confusion and deception of the consuming public is not distinct from the very

harm that trademark laws generally seek to redress." *Coach*, 908 F. Supp. 2d at 436 (cleaned up). The majority construction of GBL §§ 349 and 350, to which this Court adheres, requires a showing of some other form of public harm. Such is not pled here. *See, e.g., Crawford*, 758 F.3d at 490 (affirming dismissal of GBL § 349 claim at summary judgment where the case was more akin to a "private contract dispute, which is unique to the parties and would not fall within the ambit of the statute" (cleaned up)); *Fossil Grp., Inc. v. Angel Seller LLC*, No. 20 Civ. 2441, 2025 WL 1031062, at *8 (E.D.N.Y. Apr. 7, 2025) (dismissing deceptive acts and practices claim where no public harm alleged); *Blockchange Ventures I GP, LLC*, 2021 WL 4340648, at *9 (same); *cf., e.g., Fischer*, 2015 WL 195822, at *13 (GBL §§ 349 and 350 claim adequately pled where complaint alleged, *inter alia*, potential health problems from ingesting tainted honey).

## CONCLUSION

For the foregoing reasons, the Court denies the motion to dismiss Counts One and Two, and grants the motion to dismiss Count Three. The Clerk of Court is respectfully directed to terminate the motions pending at Dockets 20 and 31.

Discovery will now commence. By May 26, 2025, the parties are to submit a proposed case management plan, consistent with the Court's individual rules, that provides for the close of fact discovery by the end of September 2025.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: May 20, 2025
    New York, New York